**Roger L. SUMMER, Plaintiff-Appellant,**

v.

**LAND & LEISURE, INC., et al., Defendants-Appellees.**

**Roger L. SUMMER, Plaintiff-Appellant Cross-Appellee,**

v.

**LAND & LEISURE, INC., et al., Defendants-Appellees Cross-Appellants.**

**Nos. 79–2429, 80–5297.**

United States Court of Appeals, Fifth Circuit.*
Unit B

Dec. 28, 1981.

---

Byron G. Mathews, Jr., Lane, Mitchell & Harris, Claude Robert Murray, Jr., Miami, Fla., for Roger L. Summer.

Carl D. Liggio, New York City, Podhurst, Orseck & Parks, Joel D. Eaton, Michael S. Olin, Miami, Fla., for Arthur Young & Co.

Jacobs, Robbins & Gaynor, Guy M. Burns, St. Petersburg, Fla., for Raymond, James & Associates, Inc.

Jesse C. Jones, Miami, Fla., for Babcock, Bailey, Bailey, Sr., Bailey, Jr. and Land & Leisure, Inc.

Robert R. Fischer, pro se.

Robert Little, pro se.

Before GODBOLD, Chief Judge, FRANK M. JOHNSON, Jr. and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

On February 23, 1978, appellant Roger L. Summer (referred to as "Summer" or "plaintiff" or "appellant") filed this complaint in the United States District Court for the Southern District of Florida. Subject matter jurisdiction was predicated on alleged violations of the federal securities laws; however, several state law claims were also asserted under the district court's pendent jurisdiction. Summer was an investor in Land & Leisure, Inc. ("L&L"). Between June 24, 1971, and January 3, 1973, he purchased, in eleven installments, a total of 9,500 shares of L&L common stock at a total cost of approximately $54,000. L&L stock did not fare well over the years. In his complaint, Summer alleges a conspiracy or scheme among the several defendants to defraud investors and to conceal the fraud. Count I of the complaint alleges a claim under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10(b)–5 of the Securities and Exchange Commission; Counts II and VI allege claims of common law fraud; Counts III, IV and V allege claims under §§ 11, 12(2), and 17 of the Securities Act of 1933, 15 U.S.C.A. §§ 77k, 77l(2) and 77q; Count VII alleges a claim under the Florida Blue Sky Law, Fla.Stat. §§ 517.21 and 517.301; Count VIII is a state claim of mismanagement and breach of fiduciary duties by corporate officers and directors; and Count IX

is a state law claim for breach of the corporate opportunity doctrine. Defendants are Land & Leisure, Inc.; and Guy B. Bailey, Guy B. Bailey, Jr., Areca Stone Bailey, Charlotte Babcock, Robert Little, Jerome Grossman, and Robert Fischer, who were at one time or another officers or directors or both of L&L; and Raymond James Associates, Inc. ("Raymond"), the lead underwriters for L&L; and the accounting firm of Arthur Young & Co. which prepared the registration statement and prospectus for L&L. We sometimes refer to all defendants collectively as "defendants." We sometimes refer to all defendants except Arthur Young and Raymond as the "corporate defendants," *i. e.,* the corporation, Land and Leisure, Inc., and its several officers or directors. Defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The district court granted the motion as to all the claims under federal law on the ground that they were barred on their face by the applicable statutes of limitations and, as there were no pending federal questions, exercised its discretion to dismiss the claims under state law. Furthermore, the district court determined that the complaint was frivolous and awarded attorney's fees and costs in favor of the defendants, except Little, in the aggregate amount of $32,480. *See* § 11(e) of the Securities Act of 1933, 15 U.S.C.A. § 77k(e).

## I. APPLICABLE STATUTES OF LIMITATIONS FOR CLAIMS UNDER THE FEDERAL SECURITIES LAWS

Our first task is to determine the applicable statutes of limitations for the federal securities claims. We note that more than seven years elapsed between the first purchase of stock and the filing of the complaint, and more than five years passed from the last purchase of stock and the filing of the complaint.

### A. The Section 10(b) Claims.

Since § 10(b) of the 1934 Act, 15 U.S.C.A. § 78j(b), provides no statute of limitations,

we look to the most analogous state statute of limitations. Under Florida law, Fla.Stat. § 517.21, provides for a two-year statute of limitations on actions for violation of Florida securities laws. *See Nortek, Inc. v. Alexander Grant & Co.,* 532 F.2d 1013 (5th Cir.), *rehearing denied,* 536 F.2d 624 (1976). Section 517.21 was repealed on July 1, 1976, by Chapter 76–168, § 3 of the Laws of Florida of 1976. *See Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 460 n.10 (5th Cir. 1981). Fla.Stat. § 95.-11(5)(d) (amended 1975) provides for a three-year statute of limitations on actions for fraud. *See Vigman v. Community National Bank & Trust Co., supra.* We note that § 95.11(5)(d) was changed from three to four years on January 1, 1975. *See Vigman v. Community National Bank & Trust Co.,* 635 F.2d at 460 n.11. The district court applied the four-year statute. Since the last sale was on January 3, 1973, and since the complaint was filed on February 23, 1978, which is more than four years, the district court concluded that plaintiff's § 10(b) and Rule 10(b)–5 claims were barred. We need not decide which of the foregoing statutes of limitations apply in this case. Even assuming that the longest, the four-year statute, applies, it is clear that plaintiff's § 10(b) and Rule 10(b)–5 claims are barred, in the absence of circumstances which would toll the statutes.

### B. The Section 17 Claims.

With respect to the claims under § 17 of the 1933 Act (a portion of Count III), the appropriate state statute of limitation also governs. *See Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036 (10th Cir. 1980); *Newman v. Prior,* 518 F.2d 97 (4th Cir. 1975). The district court correctly applied to the § 17 claims the same analysis as for the § 10(b) and Rule 10(b)–5 claims. *See Nortek, Inc. v. Alexander Grant & Co., supra; Turner v. Lundquist,* 377 F.2d 44 (9th Cir. 1967). Accordingly, the § 17 claims are also barred, unless the period was tolled.

### C. The Section 11 and Section 12(2) Claims.

Sections 11 and 12(2) of the 1933 Act, 15 U.S.C.A. §§ 77k and 77*l*(2) (a por-

tion of Count III, Count IV and Count V), however, are governed by the limitation period contained in § 13 of the 1933 Act, 15 U.S.C.A. § 77m, which provides:

No action shall be maintained to enforce any liability created under § 77k or § 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, . . . . In no event shall any such action be brought to enforce a liability created under § 77k . . . of this title more than three years after the security was bona fide offered to the public, or under § 77*l*(2) of this title more than three years after the sale.

The district court held that the passage of more than three years between the alleged wrongful act and the commencing of this action is an absolute bar to the claims under §§ 11 and 12(2), *i. e.*, the normal rules of tolling do not apply after three years. Appellant does not seriously contest this ruling and it is consistent with a view of the majority of the courts to consider the question. *See Brown v. Producers Livestock Loan Co.*, 469 F.Supp. 27 (D.Utah 1978); *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899 (E.D.Wis.1978); *Cowsar v. Regional Recreations, Inc.*, 65 F.R.D. 394 (M.D.La.1974). The Tenth Circuit has interpreted the almost identical language in the Interstate Land Sales Full Disclosure Act to constitute an absolute bar. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d at 1042–43. *But see In re Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 337 (N.D.Okl.1975). The court in *Turner v. First Wisconsin Mortgage Trust, supra*, rejected the plaintiff's argument that the three-year period could be tolled by the defendant's concealment of the claim. "Otherwise [§ 13] would create a limitation period for all suits of one year from the time discovery of the untrue statements or

omissions should have been made, and the three-year provision would serve no purpose at all." 454 F.Supp. at 911. We find this reasoning convincing. We hold that the normal tolling rules are not applicable to toll the three-year period. Accordingly, we hold that appellant's claims under § 11 and § 12(2) are absolutely barred and affirm the district court's dismissal of those claims.

## II. DID APPELLANT ALLEGE SUFFICIENT FACTS WHICH WOULD TOLL THE STATUTE OF LIMITATIONS ON THE § 10(b) AND § 17 CLAIMS?

While we relied upon state law for the appropriate statute of limitations, federal law determines "when the clock starts to running" for purposes of the statute of limitations. *See Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8 (5th Cir. 1967). "Under federal law, a cause of action under § 10(b) and Rule 10(b)–5 . . . accrues when the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *See Vigman v. Community National Bank & Trust Co.*, 635 F.2d at 459. Appellant claims that by the exercise of due diligence he did not discover the claims now asserted until 1977, within one year before the complaint was filed, and well within the appropriate statute of limitations whether it be two, three or four years.

We turn to the allegations of the complaint, particularly those of concealment of the facts by the defendants, which would tend to establish that plaintiff exercised due diligence in discovering the claims which he now asserts. The allegations throughout the complaint which would establish appellant's due diligence or concealment of facts by the corporate defendants fall into three categories:[1] (1) that the

---

1. The allegations of concealment are not contained within each and every count of the complaint; however, the allegations are contained at various points in the complaint. We believe it would be contrary to the liberal reading which we must give to a complaint upon mo-

tion to dismiss to consider the allegations of concealment only as to those counts in which the allegations are set forth. Having made such allegations with respect to some counts, and there being a reasonable inference that the allegations would likewise apply to the other

defendants conspired to fail to file required reports with the Securities and Exchange Commission, to fail to file and mail stockholders reports and proxy statements, and to fail to call annual stockholders meetings; (2) that defendants attempted to lull appellant by telling him that reports on L&L's financial condition would be forthcoming and that all was well with L&L; and (3) that defendants conspired to prevent the appellant from learning the true condition of the corporation by denying appellant access to corporate books and records, by falsely advising appellant that records had been lost or were unavailable, and by making false entries in the books and records. Appellant asserts, as a consequence of these actions, he did not reasonably discover the existence of the claims until 1977.

We are mindful of the standard for ruling on a Rule 12(b)(6) motion: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In granting the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6), the district court held, as a matter of law, that the plaintiff was aware of facts which would have disclosed the alleged fraud. The facts relied upon by the district court were only three: first, Summer's knowledge that the defendant corporation did not hold annual stockholders' meetings;

second, his knowledge that the defendant corporation did not send out annual stockholders' reports; and third, his knowledge of the sharp decline in the value of the stock.

With respect to the decline in the price of the Land and Leisure stock, we note that the bulk of Summer's purchases occurred after the substantial price decline, and that all the purchases were made through the underwriter, Raymond. It is a reasonable inference from the pleadings that the independent accounting firm, Arthur Young, continued to provide accounting services throughout the relevant time, including in particular after the time of the substantial price decline. If the price decline did not put the accounting firm and the underwriter on notice, it is a reasonable inference that it would not have put Summer on notice. We can conceive of several factual situations in which a price decline, under the circumstances here, would not be indicative of fraud in the least, *e. g.*, a depressed real estate market caused either by tight money or recession.[2]

With respect to the failure to send annual stockholders' reports and hold annual stockholders' meetings, none of the defendants have cited any case, nor have we found one, which holds that the mere failure to send such reports or hold such meetings is sufficient to put an investor on notice of facts which in the exercise of due diligence would have led to actual knowledge of fraud.[3]

---

counts, we surely cannot conclude that it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.

2. Defendants cite several cases in which a plaintiff's knowledge of the declining market price of securities has been a factor indicating that plaintiff had knowledge of facts which should have led to the discovering of the fraud. However, these cases apparently involved misrepresentations relating to the value of the securities—*e. g.*, that the investment would produce a stable income with no risk—so that sharp declines in value shortly after such misrepresentation would in fact tend to indicate that the representation was false. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690 (8th Cir. 1981); *Koke v. Stifel, Nicolaus & Co.*, 620 F.2d 1340 (8th Cir. 1980); *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir.

1980); and *Hupp v. Gray*, 500 F.2d 993 (7th Cir. 1974). In the instant case, a decline in market price is not inconsistent with the representations complained of nor otherwise suggestive of the fraud alleged.

3. Arthur Young's reliance upon *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir. 1978), is misplaced. *Cook* did not hold that the failure to hold a stockholders' meeting constituted notice. In *Cook*, a stockholders' meeting was in fact held, and plaintiff would have become aware of the misrepresentations had plaintiff attended. *Id.* at 696, n.22. Nevertheless, the First Circuit declined to adopt an inflexible rule imputing such knowledge to a shareholder who did not attend the meeting; rather, the court held only that the failure to attend was one factor to be weighed adversely to plaintiff's diligence. *Id.* at 695, n. 21.

■ In the present posture of this case [4] —a Rule 12(b)(6) dismissal—the three facts relied upon by the district court are simply not sufficient to justify a conclusion that "it appears beyond doubt that the plaintiff can prove no set of facts" which would adequately explain why plaintiff did not become suspicious. In fact, Summer has made significant allegations tending to explain his lack of suspicion and tending to support his allegation of due diligence. As against all defendants, Summer has alleged generally a conspiracy to fraudulently conceal from plaintiff the material facts. As against the corporate defendants, Summer specifically alleged misrepresentations on numerous occasions that reports of financial condition would be forthcoming, that all was well with the defendant Land and Leisure, and that annual meetings would be forthcoming. In addition, Summer alleged that he was denied access to records, and that there were attempts to prevent him from learning the true financial condition by hiding records, removing records, making false entries in records, and misrepresenting that records were also lost or destroyed. Accordingly, we hold with respect to all defendants, except Arthur Young and Raymond, that the district court erred in dismissing plaintiff's complaint pursuant to Rule 12(b)(6). In *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir. 1967), we stated:

> We disagree, however, with its disposition of the issue of due diligence on motions for summary judgment.
>
> Recognizing that " * * * the question whether a party had sufficient opportunity, so that in the exercise of reasonable diligence he would have discovered the facts forming the basis of his cause of action, may raise issues of fact which would have to be tried to a jury; * * * ", the learned judge, on the facts contained in the record before us, treated it as a question of law to be determined by the court and arrived at the ultimate conclusion that: "Considering the depositions, documents and affidavits filed herein, there can be no question that plaintiff was put on notice as to the facts constituting its alleged cause of action no later than early September, 1961." We note in passing that neither of the four cases relied upon by the trial court to support this result involved adjudication upon a motion for summary judgment.
>
> The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application. A fraud which is flagrant and widely publicized may require the defrauded party to make immediate inquiry. On the other hand, one artfully concealed or convincingly practiced upon its victim may justify much greater inactivity. The presence of a fiduciary relationship or evidence of fraudulent concealment bears heavily on the issue of due diligence.

386 F.2d at 9 (footnotes omitted). Of course we express no opinion as to whether the record in the instant case on remand will develop such that the due diligence issue can be resolved on summary judgment, or whether a full trial will be necessary. However, we are confident that it was error to conclude that "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. Accordingly, the dismissal of the complaint was error with respect to all defendants except Arthur Young and Raymond.

■ Because the district court concluded that Summer had knowledge of facts which should have led to his discovery of the fraud, the district court did not address the subsidiary argument of Arthur Young and Raymond that the complaint contains only conclusory allegations as against those two defendants. We agree with Arthur Young and Raymond that the complaint includes only conclusory allegations of fraudulent concealment as against Arthur Young and Raymond. Rule 9(b), Fed.R.Civ.P., requires

---

4. We note that most of the cases relied upon by the defendants were appeals from summary judgments rather than 12(b)(6) dismissals. The plaintiffs were allowed to support their claim with matters outside the pleadings.

that the elements of fraud be pleaded with particularity. Accordingly, we affirm the judgment of the district court to the extent that it dismissed the complaint with respect to Arthur Young and Raymond, but we hold that on remand Summer be granted leave to amend to assert more particularized allegations as against Arthur Young and Raymond, if he can do so. See 2A Moore's Federal Practice, ¶ 9.03 (indicating that dismissal for failure to comply with Rule 9(b) is almost always with leave to amend).

## III. THE OTHER ISSUES ON APPEAL

Our disposition necessarily supplants the district court's determination that the complaint was without merit and that the defendants were entitled to attorney's fees. We therefore vacate the award of attorney's fees, which also makes it unnecessary for us to address the issues on cross-appeal relating to the amount of attorney's fees. Likewise, we reinstate the pendent state claims.

## IV. CONCLUSION

We affirm the district court's dismissal of the § 11 and § 12(2) claims as against all defendants. As against all defendants except Arthur Young and Raymond, we reverse the district court's dismissal of the § 10(b) and Rule 10(b)–5 claims and the § 17 claims and remand for further proceedings not inconsistent with this opinion. As to Arthur Young and Raymond, we affirm the dismissal of the § 10(b) and Rule 10(b)–5 claims and the § 17 claims, but direct that leave to amend be granted. The district court's award of attorney's fees is vacated. The pendent state claims are reinstated. All costs of this appeal shall be taxed against appellees.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.